UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN FITZGERALD,

    Plaintiff,

v.                                                                              CASE NO:   8:21-cv-01017

CITY OF TAMPA,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOHN FITZGERALD, (hereinafter "Fitzgerald," "Corporal Fitzgerald" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against Defendant, CITY OF TAMPA (hereinafter "CITY OF TAMPA" or "Defendant") and states the following:

## JURISDICTION AND VENUE

1. This is an action brought Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al*; and 42 U.S.C. §§1981 and 1983. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

2. This Court has personal jurisdiction over Defendant CITY OF TAMPA because at all times related it has been organized and in existence within Hillsborough County, Florida, within this District.

3. Venue is proper in the US District Court for the Middle District of Florida under 28 USC §1391 because the events giving rise to Plaintiff's claim occurred in this judicial district.

1

## PARTIES

4. Plaintiff, John Fitzgerald, is a white male citizen of the United States residing in Pinellas County, Florida.

5. At all times material, Plaintiff was an employee of Defendant, CITY OF TAMPA.

6. Defendant, CITY OF TAMPA, operates the Tampa Police Department in Tampa, in Hillsborough County, Florida.

7. At all times material, Defendant, CITY OF TAMPA, has been organized and in existence within Hillsborough County.

8. At all times material hereto, Defendant, CITY OF TAMPA, was an "employer" within the meaning of the Florida Civil Rights Act and Title VII of the Civil Right Act.

## ADMINISTRATIVE PREREQUISITES

9. Plaintiff has satisfied all pre-suit requirements necessary for filing this action. On or about September 24, 2019, Fitzgerald timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against the Tampa Police Department, an Agency within the CITY OF TAMPA. In the Charge of Discrimination Fitzgerald alleged he was the subject of unlawful discrimination based upon his race and had suffered retaliation for engaging in a protected activity.

10. The CITY OF TAMPA knew of the pending EEOC charge and had an opportunity to participate in the conciliation process. The filing of the EEOC Charge against the Tampa Police Department acted as a filing against the CITY OF TAMPA as the City took up the defense and conducted the response to the EEOC investigation.

11. On February 9, 2021, Plaintiff received a Notice of Suit Rights from the Department of Justice granting him permission to file suit in this matter.

## GENERAL ALLEGATIONS

12. John Fitzgerald is a white male that worked as Police Officer for the CITY OF TAMPA from 2002 until 2019.

13. Fitzgerald had an exemplary career with the CITY OF TAMPA as Police Officer.

14. From 2002 to 2013 Fitzgerald worked as a Patrol Officer, a Detective, and a Field Training Officer. In 2013, he was selected to be a member of the Internal Affairs Investigation Unit.

15. In 2019 Officer Fitzgerald elected to leave Internal Affairs and take a position as a Corporal on the Field Training squad in District II, working under the direct supervision of Sergeant Liza Doane in the Field Training Evaluation Program ("FTEP").

16. As a Corporal on the Field Training squad, Fitzgerald was responsible for assisting Sergeant Liza Doane with the daily operations of the squad, while ensuring the Field Training Officers and Probationary Officers were in compliance with the program's guidelines. The Tampa Police Department followed a score-based system of training established by the San José Police Department known as the San José Model. The Tampa Police Department referred to this as the Field Training Evaluation Program ("FTEP").

17. In 2019 Officer Sedona Lafontant was assigned to undergo on the job training as a Probationary Officer in District II. P.O. Lafontant is an African-American female.

18. P.O. Lafontant had a difficult time with the Field Training exercises and struggled to advance through the program. Though she was given several opportunities, she could not perform well enough to pass the third phase of the training program.

19. Officer Fitzgerald worked closely with P.O. Lafontant to encourage her and teach her the concepts she needed to advance in the program.

20. Despite Officer Fitzgerald's efforts to work with P.O. Lafontant, her struggles continued, and she reached a point where she was not meeting the required passing scores to advance in the training program.

21. In August 2019, P.O. Lafontant was assigned to a Field Training Officer named Heather Hanson. FTO Hanson worked in District II's Satellite Field Training Squad led by Sergeant P.J. Gray and Corporal Margo Fergusson. P.O. Lafontant had previously trained under several other Field Training Officers and was reassigned because of her lack of progress.

22. On August 6, 2019, Sergeant Doane authored an Alternative Interval Training Report regarding P.O. Lafontant's performance and the need for a second extension in phase three of her training. Sergeant Doane entered this report in the FTEP computer database where it could be viewed by those with access to the database.

23. In the report, Sergeant Doane recommended that P.O. Lafontant receive remedial training as part of her shift assignment. However, the report did NOT recommend that P.O. Lafontant undergo more intense scenario training with the Training Unit.

24. On August 13, 2019, Sergeant Doane went over the report with P.O. Lafontant.

25. The Report called for a second two-week extension to the training to allow P.O. Lafontant to meet the requirements for matriculation to the next phase of the training – Phase IV.

26. On August 19, 2019, P.O. Lafontant met with Captain Zambito and Lieutenant Filippone about her lack of progress in the field training program. At this meeting P.O. Lafontant asked if she could undergo remedial scenario training with the Training Unit similar to what she had experienced as a cadet. Captain Zambito and Lieutenant Filippone agreed that P.O. Lafontant should schedule a session of remedial training with the Training Unit to help her review scenarios for determining when to use force as an Officer.

27. On August 20, 2019, following the meeting with P.O. Lafontant, Lieutenant Filippone told Sergeant Doane to arrange for P.O. Lafontant to attend remedial training at the Training Unit.

28. On August 20, 2019, Sergeant Doane directed Corporal Fergusson to schedule a training session for P.O. Lafontant at the Training Unit. Corporal Fergusson called the Training Unit and left a message about training on that same day.

29. On August 22, 2019, Corporal Fergusson sent a follow up email to Training reiterating the request to schedule training for P.O. Lafontant. Having not received a response, Sergeant Doane and Corporal Fergusson notified Lieutenant Filippone that they had been unable to schedule remedial training for P.O. Lafontant.

30. On August 27, 2019, Corporal Fitzgerald recommended that P.O. Lafontant receive yet another two week extension of the Field Training Program to give her time to attend the training and improve her performance on the shift evaluations so that she could pass the third phase.

31. On August 28, 2019, Lieutenant Filippone followed up with the Training Unit to schedule a session for P.O. Lafontant.

32. On or about August 30, 2019, Assistant Chief Bercaw replaced Captain Tony Zambito with Captain Stout as head of the Field Training Program. Chief Bercaw saw that P.O. Lafontant was at risk of failing out of the Training Program if she received a low score on her shift set for August 30, 2019. In light of this, Chief Bercaw directed Captain Stout to suspend evaluations for P.O. Lafontant. Acting on this order Captain Stout called the FTO over P.O. Lafontant and asked her to cease all evaluations of P.O. Lafontant until she attended the remedial

training at the Academy. He then told Lieutenant Filippone that P.O. Lafontant was not to be graded on a shift until she received the remedial training.

33. Chief Bercaw's decision to suspend evaluations for P.O. Lafontant violated the Tampa Police Department's Field Training Protocol. The Tampa Police Department follows the San José Model in its Field Training Program. In order to maintain the integrity of the training program it is essential under the San José Model that all trainees are scored every shift they work.

34. Allowing a Probationary Officer to temporarily avoid evaluations undermines the evaluation process and gives that probationary Officer an unfair advantage over the other trainees. It could also allow an Officer to graduate from the program without being adequately prepared to work on the streets.

35. On August 30, 2019, Lieutenant Filippone informed Sergeant Doane and Corporal Fitzgerald that Captain Stout had instructed P.O. Lafontant's FTO not to evaluate her on her shift until she received the remedial scenario training at the Academy. At this point, both Sergeant Doane and Corporal Fitzgerald objected to this course of action and told Lieutenant Filippone that it was against the rules of the Field Training Program to suspend daily evaluations of a probationary officer. They explained that all Probationary Officers had to be graded every day, so that the training would be fair and not compromised.

36. Lieutenant Filippone explained that he was acting on Captain Michael Stout's order. He then asked Sergeant Doane if she would like to speak to Captain Stout about his order. She said she would. Lieutenant Filippone and Sergeant Doane then left for Lieutenant Filippone's office where they called Captain Stout for a conference call. On the call, Lieutenant Filippone informed Captain Stout of the objections raised by Sergeant Doane and Corporal

Fitzgerald relating to P.O. Lafontant being allowed to work an ungraded shift as it is against the rules of the FTEP.

37. Corporal Fitzgerald did not join this call but instead went out for his shift. P.O. Lafontant's shift was already in progress at this point.

38. In the early morning of August 31, 2019, just after midnight, Captain Stout arrived at the District II Office after working the USF Football game that night. Corporal Fitzgerald entered the office after the end of his shift and was surprised to see Captain Stout in the Field Training Office reviewing documents with Sergeant Doane. After saying hello to both of them and logging on to check his email he realized they were having a private conversation and left the room.

39. In that meeting between Captain Stout and Sergeant Liza Doane on August 31, 2019, Captain Stout confronted Sergeant Doane about her position that P.O. Lafontant should not have been permitted to work an ungraded shift. Captain Stout falsely alleged that District II had been failing all of the Black Probationary Officers and that she (Sergeant Doane) needed to get on board with the Mayor's agenda to hire and promote more black police officers. When Sergeant Doane denied his allegations and said they had to follow FTEP guidelines, Captain Stout aggressively told her to "shut her mouth."

40. After this meeting Sergeant Doane believed that Captain Stout was going to transfer her out of District II and she said as much to Corporal Fitzgerald.

41. On or about September 1, 2019, CAPTAIN STOUT announced that Sergeant Doane and Corporal Fitzgerald were being demoted from their positions as Field Training Officers and transferred out of District II.

42. On September 3, 2019 Major Michael Baumister called Corporal Fitzgerald on his day off with Captain Michael Stout in his office on speaker phone. On the call Major Baumister informed Corporal Fitzgerald that he was being transferred out of District II. Corporal Fitzgerald asked Captain Stout why he was being transferred. Captain Stout told Corporal Fitzgerald that he wanted to go in a different direction. He admitted that Corporal Fitzgerald had done nothing wrong and had no performance issues that justified the demotion and transfer.

43. Captain Stout said he would transfer Corporal Fitzgerald to the Corporal position for School Resource Officers in District II. Corporal Fitzgerald said he did not want to work as a School Resource Officer Corporal. When asked where he would like to be transferred Corporal Fitzgerald said he would like to go to the Real Time Crime Center ("R.T.C.C."). Captain Stout said he would look into it. He later informed Corporal Fitzgerald that he could not transfer to the R.T.C.C.

44. On September 4, 2020 Corporal Fitzgerald met with Captain Stout at a Starbucks at 7:15 pm to discuss the issue of where he was to be assigned. This meeting occurred after normal working hours. At the meeting Corporal Fitzgerald again asked why he was being transferred. He told Captain Stout that he had been in law enforcement for 22 years and that he had never been disciplined or transferred against his will.

45. Captain Stout then told Fitzgerald that he had done nothing wrong but was simply being transferred for the sake of diversity. Captain Stout explained that the Chief wanted more diversity on the FTO squad and that is why he was being transferred. Tampa's Police Chief, Brian Dugan, had instructed the Captains and Assistant Chiefs to look for opportunities to replace White Police Officers with Black Police Officers in order to increase the diversity of the department.

46. Captain Stout told Fitzgerald to think about where he wanted to be transferred and to let Lieutenant Filippone know that same night. Captain Stout instructed Fitzgerald to provide a list in order of preference of the different districts within the Police Department.

47. That same night, after a discussion with Corporal Fitzgerald, Lieutenant Filippone sent an email to Captain Stout with Fitzgerald's transfer preferences. Fitzgerald had placed District III at the bottom of his list because he was concerned that he could face retribution for work he had performed in the Internal Affairs division relating to several officers in District III.

48. On September 7, 2019, Captain Stout told Fitzgerald that he was going to be transferred to District III. Fitzgerald began reporting to Major Calvin Johnson in District III within days.

49. As a result of being transferred, Fitzgerald suffered a reduction in pay because he was no longer entitled to the Field Training Officer bonus.

50. Captain Stout selected Corporal Jergens Pierre (a Black male) to replace Fitzgerald as the Corporal Field Training Officer for District II. Corporal Pierre had less time with the Department, less time as a Corporal, and was significantly less qualified than Fitzgerald to fill the role.

51. On September 28, 2019, after serving 22 years as a police officer, Corporal Fitzgerald retired rather than work under duress in District III.

52. Fitzgerald performed the duties of his position with the CITY OF TAMPA in an exemplary manner. He always achieved high marks in his evaluations and was never disciplined.

53. At all times material hereto, Defendants exhibited a deliberate indifference to the racial discrimination and retaliation suffered by Plaintiff.

54. Fitzgerald has suffered damages because of discrimination based on race while working as an employee of the CITY OF TAMPA.

55. Fitzgerald has incurred costs and attorney's fees in bringing this action.

## COUNT I

### DISCRIMINATION BASED ON RACE RESULTING IN DEMOTION AND TRANSFER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

56. Fitzgerald realleges the allegations put forth in Paragraphs one (1) through fifty-five (55) as if set forth fully herein.

57. This is an action against the CITY OF TAMPA for discrimination based on race brought under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al*.

58. Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's race.

59. Fitzgerald is protected by Title VII from discrimination based on his race.

60. Fitzgerald has satisfied all procedural and administrative requirements set forth in Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al*.

61. The CITY OF TAMPA's demotion and transfer of Fitzgerald from Field Training Corporal in District II to Detective in District III, was based on his race.

62. Captain Stout said in his own words that he transferred Corporal Fitzgerald to District III because of diversity. In saying this, he revealed that the CITY OF TAMPA planned to replace him with a Black police officer and thereby increase the diversity of District II.

63. After the CITY OF TAMPA demoted and transferred Fitzgerald to District III, he was replaced by Officer Jergens Pierre, a Black officer with less experience and training than Fitzgerald.

64. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events complained of herein resulted in adverse action against Fitzgerald.

65. The unlawful employment practices complained of above were intentional and done with the express purpose of discriminating against Fitzgerald because of his race.

66. Fitzgerald was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

67. As a direct, natural, proximate and foreseeable result of the CITY OF TAMPA's actions, Plaintiff has suffered loss of pay and loss of privileges. Plaintiff has suffered and will continue to suffer irreparable injury in the form of mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation caused by Defendant's conduct described herein.

**WHEREFORE**, Plaintiff respectfully invokes the remedial powers of this Court as provided in Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al*, and prays for a judgment:

A. Awarding Plaintiff back pay and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant CITY OF TAMPA;

B. Awarding Plaintiff compensatory damages against Defendant CITY OF TAMPA;

C. Awarding reasonable attorney's fees and costs incurred in this action;

D. Ordering such additional equitable relief as is proper and just, including, but not limited to, reinstatement to the equivalent position of employment, the discipline and discharge of any employees of Defendant CITY OF TAMPA found to have violated Title VII by discriminating against Plaintiff.

## COUNT II

### DISCRIMINATION BASED ON RACE RESULTING IN CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHT ACT OF 1964

68. Fitzgerald realleges the allegations put forth in Paragraphs one (1) through fifty-five (55) as if set forth fully herein.

69. This is an action against the CITY OF TAMPA for discrimination based on race brought under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al* ("Title VII").

70. Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's race.

71. Fitzgerald is protected by Title VII from discrimination based on his race.

72. Fitzgerald has satisfied all procedural and administrative requirements set forth in Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al.*

73. The CITY OF TAMPA's demotion and transfer of Fitzgerald from Field Training Corporal in District II to Detective in District III, was based on his race.

74. Captain Stout said in his own words that he transferred Corporal Fitzgerald to District III because of diversity. In saying this, he revealed that the CITY OF TAMPA planned to replace him with a Black Police Officer and thereby increase the diversity of District II.

75. After the CITY OF TAMPA demoted and transferred Fitzgerald to District III, he was replaced by Officer Jergens Pierre, a Black Officer with less experience and training than Fitzgerald.

76. As a result of the CITY OF TAMPA's transfer of Fitzgerald to District III he was forced to work with several officers that he had investigated as part of a controversial Internal Affairs investigation. This created an environment that was hostile and intolerable for his

continued employment with the CITY OF TAMPA. The transfer to District III essentially forced him to retire in order to avoid working in this dangerous environment.

77. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events complained of herein resulted in adverse action against Fitzgerald.

78. The unlawful employment practices complained of above were intentional and done with the express purpose of discriminating against Fitzgerald because of his race.

79. Fitzgerald was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

80. As a direct, natural, proximate, and foreseeable result of the CITY OF TAMPA's actions, Plaintiff has suffered loss of pay, both past and future, and loss of privileges. Plaintiff has suffered and will continue to suffer irreparable injury in the form of mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation caused by Defendant's conduct described herein.

**WHEREFORE**, Plaintiff respectfully invokes the remedial powers of this Court as provided in Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al*, and prays for a judgment:

A. Awarding Plaintiff back pay and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant CITY OF TAMPA;

B. Awarding Plaintiff compensatory damages against Defendant CITY OF TAMPA;

C. Awarding reasonable attorney's fees and costs incurred in this action.

D. Ordering such additional equitable relief as is proper and just, including, but not limited to, reinstatement to the equivalent position of employment, the discipline and discharge

of any employees of Defendant CITY OF TAMPA found to have violated Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al* by discriminating against Plaintiff.

## COUNT III

### RETALIATION RESULTING IN DEMOTION, TRANSFER AND CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

81. Fitzgerald realleges the allegations put forth in Paragraphs one (1) through fifty-five (55) as if set forth fully herein.

82. This is an action against the CITY OF TAMPA for retaliation based on engagement in a protected activity brought under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al*.

83. Title VII makes it unlawful to retaliate against any individual in the terms, conditions, or privileges of employment based on that person's engagement in a protected activity.

84. Fitzgerald is protected by Title VII from retaliation for engagement in a protected activity.

85. Fitzgerald has satisfied all procedural and administrative requirements set forth in Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al.*

86. The CITY OF TAMPA's demotion and transfer of Fitzgerald from Field Training Corporal in District II to Detective in District III, was in retaliation for his engagement in a protected activity.

87. Upon learning that Captain Stout had directed P.O. Lafontant's Field Training Officer to suspend evaluations of her performance on August 30, 2019, Fitzgerald objected and informed Sergeant Doane and Lieutenant Filippone that this was a violation of protocol.

88. In response to Fitzgerald's objection to Captain Stout's decision to grant favorable treatment to P.O. Lafontant because of her race, the CITY OF TAMPA retaliated against him by demoting him from Field Training Officer and transferring him to District III.

89. After the CITY OF TAMPA demoted and transferred Fitzgerald to District III, he was replaced by Officer Jergens Pierre, a Black officer with less experience and training than Fitzgerald.

90. As a result of the CITY OF TAMPA's transfer of Fitzgerald to District III he was forced to work with several officers that he had investigated as part of a controversial Internal Affairs investigation. This created an environment that was hostile and intolerable for his continued employment with the CITY OF TAMPA. The transfer to District III essentially forced Fitzgerald to retire in order to avoid working in this dangerous environment.

91. The retaliation complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events complained of herein resulted in adverse action against Fitzgerald.

92. The unlawful employment practices complained of above were intentional and done with the express purpose of retaliating against Fitzgerald because of his engagement in a protected activity.

93. Fitzgerald was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

94. As a direct, natural, proximate, and foreseeable result of the CITY OF TAMPA's actions, Plaintiff has suffered loss of pay, both past and future, and loss of privileges. Plaintiff has suffered and will continue to suffer irreparable injury in the form of mental and emotional

distress, humiliation, expense, embarrassment, and damage to his professional reputation caused by Defendant's conduct described herein.

**WHEREFORE**, Plaintiff respectfully invokes the remedial powers of this Court as provided in Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al*, and prays for a judgment:

A. Awarding Plaintiff back pay and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant CITY OF TAMPA;

B. Awarding Plaintiff compensatory damages against Defendant CITY OF TAMPA;

C. Awarding reasonable attorney's fees and costs incurred in this action;

D. Ordering such additional equitable relief as is proper and just, including, but not limited to, reinstatement to the equivalent position of employment, the discipline and discharge of any employees of Defendant CITY OF TAMPA found to have violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff.

## COUNT IV

### VIOLATION OF 42 U.S.C. §1983 FOR DISCRIMINATION BASED ON RACE AS PROHIBITED BY 42 U.S.C. §1981

95. Plaintiff, JOHN FITZGERALD, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through fifty-five (55) as set forth above as if set forth fully in this count.

96. At all times relevant, by virtue of his employment by the CITY OF TAMPA, Fitzgerald was in a contractual relationship with the CITY OF TAMPA within the meaning of 42 U.S.C. §1981.

97. On September 4, 2019, the CITY OF TAMPA demoted and transferred Fitzgerald from his position as Field Training Corporal in District II to Detective in District III due to his race.

98. Defendant CITY OF TAMPA intentionally discriminated against Fitzgerald on the basis of his race.

99. Defendant CITY OF TAMPA, its agents and employees, acting within their authority and under color of state law, demoted Fitzgerald and transferred him because of his race in violation of Plaintiff's rights to be free from racial discrimination protected by 42 U.S.C. § 1981.

100. Defendant, CITY OF TAMPA's actions resulted in violations of Plaintiff's right to be free from racial discrimination, secured under 42 U.S.C. § 1981, which is actionable under 42 U.S.C. § 1983.

101. As a direct and proximate result of CITY OF TAMPA's violation of Fitzgerald's entitlement to equal right under the law as provided by 42 U.S.C. § 1981, Fitzgerald has suffered damages including but not limited to, monetary loss, mental anguish, damage to his reputation, and emotional distress.

**WHEREFORE**, Plaintiff respectfully demands the following relief against Defendant CITY OF TAMPA, and prays for a judgment:

A. Reinstating Plaintiff to the equivalent position of his employment with CITY OF TAMPA;

B. Awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant, CITY OF TAMPA;

   C. Awarding Plaintiff compensatory damages against Defendant, CITY OF TAMPA;

   D. Awarding reasonable attorney's fees and costs incurred in this action; and

   E. Awarding any other relief this Court deems just and proper.

## COUNT V

### RETALIATION IN VIOLATION OF 42 U.S.C. §1983
### FOR DISCRIMINATION BASED ON RACE AS PROHIBITED BY 42 U.S.C. §1981

  102. Fitzgerald realleges the allegations put forth in Paragraphs one (1) through fifty-five (55) as if set forth fully herein.

  103. This is an action against the CITY OF TAMPA for retaliation based on engagement in a protected activity brought under 42 U.S.C. § 1983 for actions in violations of Federal rights protected under 42 U.S.C. § 1981.

  104. 42 U.S.C. §1981 makes it unlawful to retaliate against any individual in the terms, conditions, or privileges of employment based on that person's engagement in a protected activity related to reporting or objecting to discrimination based on race.

  105. Fitzgerald is protected by Title VII from retaliation for engagement in a protected activity.

  106. Fitzgerald has satisfied all procedural and administrative requirements set forth in Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et al.*

  107. The CITY OF TAMPA's demotion and transfer of Fitzgerald from Field Training Corporal in District II to Detective in District III, was in retaliation for his engagement in a protected activity.

108. Upon learning that Captain Stout had directed P.O. Lafontant's Field Training Officer to suspend evaluations of her performance on August 30, 2019, Fitzgerald objected and informed Sergeant Doane and Lieutenant Filippone that this was a violation of protocol.

109. In response to Fitzgerald's objection to Captain Stout's decision to grant favorable treatment to P.O. Lafontant because of her race, the CITY OF TAMPA retaliated against him by demoting him from Field Training Officer and transferring him to District III.

110. After the CITY OF TAMPA demoted and transferred Fitzgerald to District III, he was replaced by Officer Jergens Pierre, a Black officer with less experience and training than Fitzgerald.

111. As a result of the CITY OF TAMPA's transfer of Fitzgerald to District III he was forced to work with several officers that he had investigated as part of a controversial Internal Affairs investigation. This created an environment that was hostile and intolerable for his continued employment with the CITY OF TAMPA. The transfer to District III essentially forced Fitzgerald to retire in order to avoid working in this dangerous environment.

112. The retaliation complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events complained of herein resulted in adverse action against Fitzgerald.

113. The unlawful employment practices complained of above were intentional and done with the express purpose of retaliating against Fitzgerald because of his engagement in a protected activity.

114. Fitzgerald was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

115. As a direct, natural, proximate, and foreseeable result of the CITY OF TAMPA's actions, Plaintiff has suffered loss of pay, both past and future, and loss of privileges. Plaintiff has suffered and will continue to suffer irreparable injury in the form of mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation caused by Defendant's conduct described herein.

**WHEREFORE**, Plaintiff, JOHN FITZGERALD, respectfully prays for a judgment:

A. Reinstating Plaintiff to the equivalent position of his employment with CITY OF TAMPA;

B. Awarding Plaintiff back pay and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant CITY OF TAMPA;

C. Awarding Plaintiff compensatory damages against Defendant CITY OF TAMPA;

D. Awarding reasonable attorney's fees and costs incurred in this action; and

E. Any other relief the Court finds appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Dated this 28th day of April, 2021.

*/s/ Gary L. Printy, Jr.*
GARY L. PRINTY, JR. Esq.
Florida Bar No. 41956
Printy & Printy, P.A.
3411 W Fletcher Ave, Ste A
Tampa, Florida 33618
(P): (813) 434-0649
(F): (813) 423-3722
garyjr@printylawfirm.com
*Attorney for Plaintiff JOHN Fitzgerald*